UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT DARNELL, Individually, and as Representative of Deceased, WILLIAM DARNELL,<br><br>        Plaintiff,<br><br>   v.<br><br>HOELSCHER INC., a corporation,<br><br>        Defendant/Third-Party Plaintiff,<br><br>   v.<br><br>WRC FARMS, LLC, and WRC THOROUGHBREDS, INC.,<br><br>        Third-Party Defendants. | Case No. 11-cv-449-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Robert Darnell's motion to strike defendant Hoelscher Inc.'s expert Darrell Hoelscher (Doc. 32) and on Hoelscher Inc.'s motion to strike Darnell's experts Dr. Lane Hudgins and Mark Ezra (Doc. 34). The Court also considers Darnell's motion to strike Hoelscher Inc.'s expert Dale Gumz (Doc. 42) and the motions *in limine* filed by both parties (Docs. 43-56 & 58-59).

**I.    Background**

This case arose after William Darnell, the plaintiff's decedent, died while operating the Hoelscher Model 1000 Hay Accumulator with serial number #04816 ("the Accumulator"), a piece of farm equipment designed, manufactured and distributed by defendant Hoelscher. The plaintiff believes that, since it left Hoelscher's control, the Accumulator was defective because it was unreasonably dangerous in a number of specific ways. The plaintiff believes that, as a result

of the defects, the Accumulator jammed, then moved without activation and injured the decedent, ultimately causing his death.

The case arrived before this Court by a convoluted path. It began in state court and was removed on the basis of original diversity jurisdiction. When the plaintiff added a non-diverse defendant, the Court remanded the case to state court, but when that defendant settled with the plaintiff, Hoelscher Inc. again removed the case. At that point, the matter had been set for trial in state court three months later and a hearing date had been set to address expert witness issues. After the second removal, this Court did all it could to expedite the resolution of this matter in accordance with the plaintiff's desire for a speedy trial. In fact, it ordered the parties to contact the magistrate judge assigned to this case for a status conference to facilitate the expeditious disposition of this case.

The parties did so, but neither mentioned unresolved issues regarding opinion witnesses or asked for briefing deadlines on motions to strike such witnesses. Instead, they waited less than a month before trial to file the pending motions. This kind of gamesmanship is unacceptable. It renders more difficult the orderly resolution of the issues and causes the Court to prioritize matters in this case before those in other cases that have been pending longer solely so this case may proceed to trial on its scheduled date. In the future, the parties and counsel involved in this case would be well-advised to alert the Court in a timely manner to issues it expects to arise, especially when the Court instructs the parties to work with the Court to facilitate the expeditious disposition of cases. However, because both parties engaged in this conduct and because resolution of the pending matters is necessary for the trial to proceed, the Court turns now to each motion in turn.

**II.    Darnell's Motion to Strike (Doc. 32)**

Darnell asks the Court to exclude the testimony of Hoelscher Inc.'s expert witness Darrell Hoelscher, the owner of Hoelscher Inc. and one knowledgeable about the testing, manufacturing, quality control, marketing, advertizing and warnings related to the Accumulator, because Hoelscher did not provide an expert report as required by Federal Rule of Civil Procedure 26(a). It is clear that Hoelscher was identified as a witness in June 2009 and as an opinion witness in March 2011, and that Darnell deposed him in November 2009.

Darnell complains that he has not been allowed to redepose Hoelscher since his disclosure as an opinion witness. This matter should have been raised in a discovery motion earlier in this case. It is too late to raise it now.

Darnell also complains that Hoelscher has not produced an expert report under Rule 26(a). However, Rule 26(a)(2)(B) only requires a written expert report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Hoelscher falls into neither of these categories, so he was not required to produce a report.

For these reasons, the Court will deny Darnell's motion (Doc. 32).

**III.    Hoelscher Inc.'s Motion to Strike (Doc. 34)**

Hoelscher Inc. asks the Court to exclude the testimony of Darnell's experts Dr. Lane Hudgins and Mark Ezra on the grounds that they are inadmissible under Federal Rule of Evidence 702 as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. In *Daubert*, the Supreme Court held that Federal Rule of Evidence 702 did not incorporate the "general acceptance" test set forth in *Frye v. United States*, 54 App. D.C. 46 (D.C. Cir. 1923). Instead, the Court held that Rule 702 required district judges to be gatekeepers

for proposed scientific evidence. *Daubert*, 509 U.S. at 589; *see also General Elec. v. Joiner*, 522 U.S. 136, 142 (1997). For scientific evidence to be admissible, the Court found, a district court must find it both relevant and reliable; it must be scientific knowledge grounded "in the methods and procedures of science" and consist of more than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589-90.

In 2000, Rule 702 was amended in response to *Daubert*. *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002). In its current form, it reads as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Court has broad discretion in reaching its ultimate conclusion regarding admissibility so long as it correctly applies the *Daubert* framework. *United States v. Lupton*, 620 F.3d 790, 798-99 (7th Cir. 2010).

A.   Dr. Lane Hudgins

Hoelscher Inc. asks the Court to exclude the testimony of Dr. Lane Hudgins, an economist who is prepared to testify about the economic loss to the business of plaintiff's decedent William Darnell that his death caused, on the grounds that her opinion is based on unreliable facts or data. Specifically, it complains that her opinion is based on the deposition testimony of plaintiff Robert Darnell and not on financial records or tax documents of the business. Hoelscher Inc. does not contest Dr. Hudgins' qualifications to render an opinion and does not argue that her testimony will not be helpful to the jury, that the principles and methods she applied to the underlying data from Robert Darnell are unreliable or that those principles or

4

methods were applied unreliably to the underlying data.

Dr. Hudgins' testimony is admissible. An expert may base her opinion on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" and "need not be admissible in evidence in order for the opinion or inference to be admitted." F.R.E. 702. Estimates of economic loss to a business by a knowledgeable employee of the business are the kind of data that can be "reasonably relied on by experts in the particular field in forming opinions or inferences upon on the subject." F.R.E. 703. The accuracy of the underlying data goes to the weight of the opinion evidence, not its admissibility, and can be challenged on cross examination of Robert Darnell and Dr. Hudgins. Therefore, the Court will not exclude Dr. Hudgins' testimony.

B. Mark Ezra

Hoelscher Inc. asks the Court to exclude the testimony of Mark Ezra, an engineer who is prepared to opine that the Accumulator was in a dangerous and unsafe condition because (1) it did not have a spring system instead of a hydraulic system, (2) it did not have an independent shut-off valve and (3) it had no warnings about when the push-over arm was descending. Again, Hoelscher Inc. does not challenge Ezra's qualifications to give opinion evidence or the helpfulness of his evidence to a jury.

Hoelscher Inc. first points to Ezra's admission that he did not have enough information to reconstruct the accident to argue that his opinion about how the accident occurred lacked foundation and was therefore unreliable. Ezra actually testified that, although he did not know exactly what William Darnell was doing when he was inside the Accumulator such that he could reconstruct the scene, based on his observation of the functioning of the Accumulator and his knowledge of engineering principles, it was physically impossible for William Darnell to get

5

inside its perimeter while it was running unless it was jammed, and based on the position in which his body was found and the working status of the Accumulator when his body was found, William Darnell's death was cause by the clearing of a jam in the Accumulator while he was within its perimeter. This conclusion is the product of reliable engineering principles and methods applied reliably to the eyewitness testimony of the person who found William Darnell's body. Ezra's opinion is admissible as to this matter.

Hoelscher Inc. also faults Ezra for not performing any testing on a spring-loaded alternate design and for failing to establish the feasibility of such an alternate design. This argument is misguided, for Hoelscher Inc. used to use a spring-loaded system in its Accumulator prior to using its hydraulic system and, indeed, obtained a patent on such a system. Clearly, that type of system was feasible in light of the fact that Hoelscher used it in the past and needed no further testing in light of that use.

Similarly, Hoelscher Inc. faults Ezra for not performing any calculations or drawings for an alternative design that had an independent shut-off valve on the Accumulator. This argument is completely disingenuous. In June 2011, Ezra modified an Accumulator with the suggested modification, produced a "Supplemental Rule 213(f) Disclosure" and provided Hoelscher Inc. with a videotape of the modified Accumulator in action. There is no need for calculations and drawings when Ezra constructed, used and tested the alternate design. Hoelscher Inc. believes this supplemental report is insufficient because it was produced with a caption erroneously indicating it was pursuant to a state court rule and filed in the state court case, which had already been removed to federal court. However, the bottom line is that Hoelscher Inc. received the report in a timely manner, the plaintiff was not required by federal rules to file it in federal court, and the captioning error and superfluous filing in state court are harmless.

Hoelscher Inc. argues that this case is governed by *Bourelle v. Crown Equipment Corp.*, 220 F.3d 532 (7th Cir. 2000). In that case, the Court of Appeals affirmed a district court decision excluding opinion testimony from a witness who had not tested or proved feasible an alternate design, made any drawings or studies of the alternate design and was unfamiliar with the product in issue on the grounds that the witness's opinion was a subjective belief and was unsupported speculation. *Id.* at 535. Here, Ezra had studied the spring-loaded design as described in Hoelscher Inc.'s patent application and had actually constructed, used and tested the shut-off valve alternate design. *Bourelle* is therefore distinguishable from this case.

Finally, Hoelscher Inc. asks the Court to exclude Ezra's opinion that the lack of a warning about the danger posed when the push-over arm was descending rendered the Accumulator unreasonably dangerous. Ezra testified that the first way to make the Accumulator safe was to make the alternate design modifications, but if those were not made, to warn of the danger. He did not propose a specific warning but contends that users of the Accumulator must be warned of the danger that he believes, based on his engineering judgment, exists in the Accumulator in its present condition. *Bourelle* does govern this issue, *see id.* at 538-39, and renders Ezra's opinion unreliable. His speculation that some undefined warning about the dangers of the push-over arm descending would have rendered the Accumulator safe are not founded on reliable principles or methods reliably applied to the facts of this case. Accordingly, the Court will bar Ezra from testifying that the lack of a warning rendered the Accumulator defective.

**IV.    Motion to Strike (Doc. 42) and Motions in Limine (Docs. 43-56 & 58-59)**

The Court has reviewed Darnell's motion to strike expert Dale Gumz (Doc. 42) all the motions *in limine* filed by Darnell and Hoelscher Inc. (Docs. 43-56 & 58-59). The Court will

deny all motions *in limine* and will explain its reasons on the record at the September 8, 2011, final pretrial conference. This case has been pending in either state court or this Court for over two years, and after removal from state court was set for trial by this Court on July 21, 2011, for a trial date of September 12, 2011. All motions having been ruled upon, the Court assumes all counsel are ready for trial beginning Monday, September 12, 2011.

## V.   Conclusion

For the foregoing reasons, the Court:

- **DENIES** Darnell's motion to strike Darrell Hoelscher's testimony (Doc. 32);

- **GRANTS in part** and **DENIES in part** Hoelscher Inc.'s motion to strike Dr. Lane Hudgins' and Mark Ezra's testimony. The motion is **GRANTED** to the extent it seeks to exclude the opinion testimony of Mark Ezra that the lack of a warning rendered the Accumulator defective. The motion is **DENIED** in all other respects (Doc. 34);

- **DENIES** Darnell's motion to strike Dale Gumz's testimony (Doc. 42); and

- **DENIES** the motions *in limine* filed by both parties (Docs. 43-56 & 58-59).

**IT IS SO ORDERED.**
**DATED:  September 7, 2011**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**